## Commonwealth v. Feenix.

*Indictment—Admissibility of testimony, on motion to quash, that grand jury acted on hearsay—When conviction may be had for separate and distinct offences involved in one general criminal undertaking.*

1. The defendant may not, on a motion to quash the indictment, attempt to prove that all or a part of the testimony before the grand jury was hearsay, in order to show that, after eliminating such testimony, what remains is insufficient to make out a *prima facie* case against him.

2. The Commonwealth cannot sub-divide a single offence into its constituent or component parts and make a separate crime of each of such parts; but this principle has no application where the one offence is not necessarily involved in the other, but is a separate and distinct crime, even though in the particular case it may constitute a part of a succession of consecutive offences committed immediately antecedent to another crime which is the main and ultimate purpose of the perpetrator.

3. The test whether one crime necessarily includes another is to be determined by the inherent nature of the crimes and not by the particular circumstances of a given case, nor with reference to what became practically desirable in order to enable the defendant to accomplish an ultimate criminal purpose.

4. One who enters a jewelry store with intent to rob, commits an assault with intent to kill, and succeeds in committing a robbery, may properly be indicted and convicted of the offences (1) of entering a building with intent to commit a felony; (2) of committing an assault with intent to kill; and (3) of robbery, under the Act of April 18, 1919, P. L. 61, amending section 100 of the Penal Code of March 31, 1860, P. L. 382.

Rule for new trial. Q. S. Phila. Co., Dec. Sess., 1924, Nos. 990 to 997.

*L. B. Schofield*, Assistant District Attorney, for Commonwealth.

*John R. K. Scott*, for defendant.

STERN, J., April 7, 1925.—The defendant, John Feenix, was indicted on bills charging robbery, conspiracy to rob, entering to commit a felony, and assault on various persons with intent to kill. The trial was a lengthy one, and was conducted with great vigor and ability on the part of both the prosecution and the defence. The crime itself was of the utmost gravity. Four men, evidently in furtherance of a carefully prepared plan, invaded in broad daylight a jewelry store on one of the main highways of Philadelphia, and, at the point of guns, drove the clerks into a back room, and there the defendant guarded them while other conspirators robbed the store of $70,000 worth of precious stones, watches and other jewelry.

The trial judge has no doubt whatever as to the guilt of Feenix. He was clearly identified by three persons who were victims of the assaults attending the robbery.

The defendant has filed a motion for a new trial, assigning thirty-nine reasons in support thereof, but at the argument only two were pressed, and neither of these relates to any alleged errors in the admission or rejection of evidence or in the charge of the court. The one complains of the refusal of the court to quash the bill of indictment, and the other of allowing the jury to render a verdict of guilty on any of the bills of indictment except that which charged robbery. It is, therefore, necessary to consider only these two matters.

1. As to the refusal to quash the bill of indictment.

When the case was called for trial, counsel for the defence filed at bar a motion to quash the indictments, and in support of such motion offered to prove by testimony of one John Clark, a detective, that "he was the only witness who appeared before the grand jury. . . . and that he, John Clark,

had no knowledge of the commission of the crimes set forth in the bills of indictment or the participation in the crimes of either the defendant Feenix or the defendant Flynn, and that the testimony which he gave to the grand jury was not of his own knowledge, but was information that had been given to him by others than the defendants, not in the presence of the defendants, and was hearsay testimony." The court overruled the offer to produce such testimony, overruled the motion to quash, and allowed exceptions accordingly. It is this action of the court which constitutes the defendant's fourth and fifth reasons assigned for a new trial.

Has a defendant the right to allege, and attempt to prove, that, as to a part or all of the testimony given by a witness or witnesses before the grand jury, they had only hearsay information? And then to assert that by eliminating such testimony there remained insufficient evidence to make out a *prima facie* case? The defendant's position, in order to be sustained, requires affirmative answers to the questions thus stated. If a defendant can investigate whether or not hearsay evidence was given before a grand jury by a single witness, he can do so as to more or all of the witnesses, and then by eliminating such testimony demonstrate that whatever unobjectionable testimony remained was not sufficient to warrant the finding of a true bill.

Before pointing out what the court conceives to be the consequences of holding that the defendant has such a right, it is proposed to consider the cases cited by counsel for the defendant, in order to ascertain whether or not there is binding authority for the position for which he contends.

The first case cited in the defendant's brief is Com. *v.* Bradney, 126 Pa. 199. That case, although the Supreme Court reversed an order quashing the bill of indictment, holds, what is admittedly the well-established rule in Pennsylvania, that an indictment may be quashed for matters not appearing upon the face of the record. The ground urged in that case was that the district attorney remained in the room with the grand jury during the period of their deliberations and while their vote was being taken. The Supreme Court ruled that, while the district attorney should not participate in the deliberations of the jury, nor try to influence their action, his mere presence in the jury-room was not good ground for quashing the bill of indictment.

The next case cited is that of Com. *v.* Green, 126 Pa. 531, in which the Supreme Court sustained the quashing of an indictment. There the grand jury made presentment of the defendant for keeping a bawdy-house, but acted only upon testimony given by witnesses examined before them upon an indictment for an assault and battery preferred against another defendant. That is to say, in taking testimony on a bill against one defendant, the grand jury incidentally learned that another person was conducting a bawdy-house, and thereupon, without any bill against such other person having been presented to them by the district attorney, they, of their own motion, made presentment thereof to the court. The Supreme Court held that, while a grand jury has in certain rare instances the power to make such presentment, they cannot do so ordinarily without a previous examination of the accused before a magistrate and the submission for their consideration of a bill of indictment by the district attorney, and that the exigency of the case in question did not require such extraordinary exercise of power on their part.

The next case cited is that of Com. *v.* Price, 3 Pa. C. C. Reps. 175 (Wyoming County). In that case it was held that an indictment would be quashed where it appeared that a witness, whose name had not been placed upon the bill of indictment by the district attorney, had been called and sworn and testified before the grand jury. This was for the reason that, under the statutory

law, the grand jury has no authority to administer an oath to one whose name has not been placed upon the bill of indictment by the district attorney; therefore, such witness was not and could not have been legally sworn, and, therefore, the indictment was founded upon unsworn testimony.

The next case is that of Com. v. McComb, 157 Pa. 611, in which the facts and principle enunciated were the same as in the Green case, supra. It was the case of a presentment made by the grand jury on their own initiative as a result of testimony heard by them in another case, the presentment being made neither upon instructions from the court nor upon any prior commitment by a magistrate.

The next case cited by the defendant is that of Com. v. Ross, 58 Pa. Superior Ct. 412. Here, an indictment was found admittedly without the grand jury calling any witnesses whatever before it. They merely read notes taken at an investigation made at some prior time, and the court quashed the indictment for this and other reasons not bearing upon the present inquiry, saying upon this point that "if it was necessary to have such evidence, the witnesses themselves should have been subpœnaed and called before the grand jury, and their testimony taken in the usual and regular way."

The next case cited is that of Com. v. Gerstman, 64 Pa. Superior Ct. 484. The Superior Court here affirmed the refusal of the court below to quash an indictment. It was alleged that the grand jury had voted simultaneously upon a number of indictments, charging different defendants with separate and different offences, having no connection with each other. The Superior Court held that the defendant could not, by calling members of the grand jury for such a purpose, seek to impeach their action, nor to inquire into the question as to how they voted or what opinion any of them expressed in relation to the matter. The court intimated that the defendant would have been permitted to show that persons testified before the grand jury whose names had not been endorsed upon the indictment, this being in accordance with the same ruling made in other cases herein referred to.

The next case is Com. v. Hamilton, 4 D. & C. 329 (Allegheny County), which the defendant claims covers the precise question now being considered. The motion there was to quash an indictment on the ground that none of the three witnesses whose names were on the bill of indictment ever appeared before the grand jury, and that the only witness who did testify there was one whose name was not on the bill. In accordance with the well-established ruling on that point, the trial judge held that the grand jury had no right to swear any witness whose name was not on the bill of indictment, and that, therefore, the testimony was unsworn. It is true that Judge Douglass refers, in passing, to the fact that the witness who was thus unsworn, and therefore incompetent to give testimony, gave hearsay evidence, but this fact is mentioned apparently as a make-weight and not as the real basis of the trial judge's decision.

The next and last case cited by the defendant is that of Com. v. Dwyer, 79 Pa. Superior Ct. 485. There a conviction of the defendant was upheld. In the course of the opinion of Judge Gawthrop, he calls attention to an assignment of error which complained of the refusal of the trial judge to give binding instructions for defendant, for the reason that the evidence disclosed that the person who made the information in the case had no knowledge or information as a basis upon which the complaint could be founded, and for the additional reason that the evidence taken at the trial showed that any evidence presented by the witnesses called before the grand jury must have been hearsay, and, therefore, that the bill of indictment was improperly obtained.

It was pointed out that, as there had been no motion to quash, this question was not before the court, and, accordingly, the Superior Court refused to consider the question, so that obviously this case is no authority whatever on the point involved.

It will thus be seen that none of the cases to which the defendant refers, and which are stated to be the only cases in Pennsylvania which approach the subject in any degree whatever, furnishes any authority, or even intimation (excluding, perhaps, a single sentence of *dictum* in the case of the trial court of Allegheny County in the Hamilton case above cited), that a defendant can successfully urge the quashing of a bill of indictment on the ground that the testimony offered before the grand jury to support it was hearsay evidence. Neither has there been presented to the court any authority of any other jurisdiction so holding. The cases above cited, when analyzed, establish merely that it is possible to have a bill quashed for matters not appearing on its face, but the only cases in which such action has been taken are where (1) the grand jury made a presentment of their own initiative without the prior submission to them of a bill of indictment, as in the Green and McComb cases; or (2) where there was some illegality in the proceedings, such as the district attorney trying to influence the deliberations of the grand jury, as discussed in the Bradney case; or (3) where no witnesses whatever appeared before the grand jury, as in the Ross case; or (4) where the only witnesses who appeared before them were persons whose names were not endorsed on the bill of indictment and, therefore, could not legally be sworn by the grand jury, under the provisions of the Act of March 31, 1860, § 10, P. L. 427, as in the Price and Hamilton cases. (There are instances conceivable also where the only witnesses appearing before the grand jury are legally incompetent to testify for some other reason.) In none of these cases, however, nor in any other brought to the attention of the court, has there been any successful attempt to call and examine a witness who appeared before the grand jury and to question him as to the testimony which he there gave, in order to attempt to find out to what extent he gave such testimony of his own knowledge and to what extent on hearsay information, and to show that, by eliminating such testimony as was hearsay, there was insufficient testimony upon which to establish a *prima facie* case.

The defendant is thus apparently unsupported by authority in any jurisdiction for the proposition which he now advances, and the trial court is left free to consider whether, in the absence of such authority and of any practice throughout the many years of administration of the criminal law to justify his contention, the proposition advanced has any inherent merit to commend it. So far from believing that there is such merit, the trial court is of opinion that the proposition is a startling one that would revolutionize the practice of criminal law.

In the first place, it is to be observed that the motion to quash the indictment on the ground here alleged is not supported by any affidavit or any statement. Accordingly, under such a procedure, the path would be open to counsel in any and every case, without any responsible averments, to make such a motion for the purpose of obtaining in effect a preliminary examination of the Commonwealth's witnesses, finding out what they testified to before the grand jury, and cross-examining them as to their sources of information.

In the second place, the result of this would be to have a rehearing in open court, preliminary to the trial, of the witnesses who appeared before the grand jury. They would be subjected to cross-examination by defendant's

counsel, who would seek to discover whether or not any of the testimony which they presented before the grand jury was incompetent under the technical rules of evidence. Even if this ultimate purpose failed, the defendant would, nevertheless, obtain the advantage of knowing in advance of the trial exactly what the Commonwealth's witnesses would testify to and of cross-examining them without the responsibility or dangers which such cross-examination might entail before the petit jury. This opportunity would not only be additional to that obtainable before the committing magistrate, but under circumstances which would allow much greater possibilities and latitudes.

In the third place, if some of the evidence which the witnesses might give as testified to by them before the grand jury proved to be objectionable under the rules of evidence which prevail in the actual trial of cases, and such evidence were eliminated from consideration, the court would be obliged to decide whether or not the remaining competent evidence made out a *prima facie* case, and thus pass in review the finding of a true bill made by the grand jury. In other words, this would amount practically to an appeal from the finding of the grand jury to the court, and all grand jury proceedings would or might be subject to rehearing in open court preliminary to trial.

In the fourth place, if witnesses testified as to what evidence they gave before the grand jury, and did so inaccurately, either by way of design or of faulty memory, there would be no satisfactory way of contradicting their statements, inasmuch as the testimony taken before the grand jury is not recorded. The only way to contradict their evidence would be by calling the grand jurors themselves for that purpose, and certainly the latter could not be expected to remember the testimony given by all of the hundreds of witnesses who appeared in the numerous cases heard by them. Even if they could and did give such opposing testimony, we would be confronted by the strange procedure of having witnesses testify as to what they stated before the grand jury, and grand jurors contradicting them as to such testimony, and all this in proceedings in open court prior to the actual trial of the case.

It is to be pointed out again that it makes no difference in principle in this matter whether one or several witnesses testified before the grand jury. If it is permissible to rehear the proceedings before the grand jury in the case of a single witness who is alleged to have given hearsay evidence, it must be permissible if there were several witnesses who are alleged to have given such evidence. Furthermore, witnesses might have given some competent and some incompetent evidence, and the incompetent evidence being removed, the remaining competent evidence might still be insufficient to support a true bill, and, therefore, the whole proceeding would have to be reviewed.

Finally, to sustain the defendant's present contention would result in this absurdity, namely, that a jury has found the defendant guilty, and yet we are asked to grant a new trial on the ground that a *prima facie* case was not made out in a preliminary stage of the proceedings! The defendant did not refuse to participate in the trial and thereby adhere to the position that the indictment was invalid, but, on the contrary, vigorously participated in the proceedings and was convicted, and the defendant does not now seriously claim that there was any error in the trial. It is thus established, not only that the Commonwealth was able to make out, and did make out, a *prima facie* case, but that it made out a case which, notwithstanding the defence offered, proved to the satisfaction of a petit jury that the defendant was guilty of the crimes charged. Would it not seem ultra-legalistic to grant a new trial on the ground, not that the defendant is innocent, but that, even though proved guilty, the grand jury erroneously concluded that a *prima facie* case

existed? It is true that there are cases holding that where the indictment on its face does not warrant the subsequent conviction, as where the indictment charges one crime and the conviction is of another, or, perhaps, where an indictment does not adequately describe any crime, the resulting conviction does not "cure" the defect, because the defendant must be accused of some crime and the "*allegata*" and "*probata*" must reasonably agree. This principle, however, does not apparently apply, either in reason or on authority, to a case where the indictment on its face is valid and complete and the conviction is for the crime therein charged, and where the objection to the indictment is based only on matters which do not appear upon its face, as that it was found on improper evidence. In such cases it would seem that a verdict of guilty should "cure" any such alleged defects in the finding of a true bill, and that a defendant waives his right to claim defects of such nature by participating in the trial. Otherwise, as above pointed out, the effect of granting a new trial in such an instance would be to make the machinery of the administration of the criminal law appear absurd. In no case cited by the defendant, nor in any other known to the court, has a new trial been granted after a verdict of guilty, on the ground that there was some impropriety or illegality in the finding of a true bill by the grand jury.

It is believed, therefore, that, as above stated, to support the proposition urged by defendant would be to introduce into the administration of the criminal law a novel and vicious practice. Certainly, if there were tradition to that effect the defendant should have been able to cite authority for it dating somewhere in the long stretch of time since the comparatively remote days when the grand jury system was inaugurated.

For the reasons thus indicated, the court is of opinion that the defendant's fourth and fifth reasons for a new trial should not be sustained.

2. As to the verdict of guilty on bills of indictment other than the robbery charge.

The defendant's thirty-ninth reason assigned for a new trial is that the "trial judge erred in refusing to charge that the major crimes upon which the defendant was indicted were merged in any lesser and constituent crimes charged in other indictments."

The defendant contends that since he was convicted on the bill of indictment framed under the provisions of the Act of April 18, 1919, § 1, P. L. 61, he cannot, in addition to conviction under that act, be convicted of the offence of assault with intent to kill, and of entry with intent to commit a felony which is provided for in the Act of March 13, 1901, § 1, P. L. 49. Of course, generally speaking, it is true that the Commonwealth cannot subdivide a single offence into its constituent or component parts and make a separate crime of each of the latter. For example, as stated in Com. v. Basha, 80 Pa. Superior Ct. 320: "When there is an offer to sell and a sale therefrom resulting, the offer is merged in the sale; and when the possession of liquor is during the course of transportation, this constitutes but one offence;" and where "two or more of the enumerated acts are so connected that one necessarily involves the other, they are merged and become but one offence." The test is, however, whether the one crime forms a *necessary* part of the other, as assault does of battery, or an assault and battery does of murder, or larceny does of robbery, and so on. This principle has no application where the one offence is not necessarily involved in the other, but is a separate and distinct crime, even though, in the particular case, it may constitute a part of a succession of consecutive offences committed immediately antecedent to another crime which is the main and ultimate purpose of the perpetrator. Thus, if

Commonwealth v. Feenix.

a person, in order to rob another, commits assault and battery on third persons standing between him and his ultimate victim, certainly such assault and battery would not be merged in the final act of robbery. So, also, it has been held that the manufacture of intoxicating liquor and the subsequent sale thereof are distinct and separate offences and not in their nature parts of a single transaction, even though the defendant may have manufactured the liquor only in order to enable him to sell it: Com. v. Saler, 84 Pa. Superior Ct. 281.

In the present case the crime of assault with intent to kill was not in any way necessarily involved in the offence of robbery as specified in the Act of April 18, 1919, P. L. 61. A person might commit all of the offences mentioned in that act without assaulting with intent to kill, and if, in conjunction with, or in addition to, those offences a person chooses also to assault with intent to kill, he is guilty of a separate and additional offence not necessarily included in the other crimes, even though in the particular case, and for practical reasons, the defendant might not have been able to carry out his plan to rob without also committing the additional crime. So, also, as to the conviction for the offence of entering with intent to commit a felony. It is true that in the present case the defendant "entered" so that he might be enabled to rob, but the two crimes are not necessarily parts of one another. The robbery, under the statute in question, might have been committed on the street; if the defendant chose to commit it within a building, and therefore had to enter the building for that purpose, it does not lie in his mouth to say that the one crime was made "necessary" in order to commit the other. Then, again, a defendant might enter a building innocently and form an intent to rob only after he was inside, in which case he would not be guilty of an entry with intent to commit a felony. In other words, the court is of the opinion that the test as to whether one crime "necessarily" includes another is to be determined by the inherent nature of the crimes and not by the particular circumstances of a given case nor with reference to what becomes practically desirable in order to enable a defendant to accomplish an ultimate criminal purpose.

The court, therefore, overrules the defendant's thirty-ninth reason assigned for a new trial. All other assignments are also overruled, and the rule for a new trial is discharged, the defendant to appear for sentence upon motion of the district attorney.