## Commonwealth *v.* Morris et al., Appellants.

*Criminal procedure—Indictment—Motion to quash—Insufficiency of evidence before grand jury.*

Upon a motion to quash an indictment, a defendant may not call and examine the witnesses who testified before the grand jury to prove that their testimony before that body was insufficient to warrant a return of a true bill. An indictment will not be quashed on the ground of the insufficiency of the evidence where some competent witnesses were examined by the grand jury.

*Criminal law—Conspiracy—School directors—Architect—Testimony of co-conspirator—Corroboration—Circumstantial evidence—Charge of Court.*

In the trial of an indictment charging a number of the school directors and an architect with conspiracy to defraud the school district by awarding a contract at an excessive price, one of the defendants entered a plea of nollo contendere. He later took the

Syllabus—Assignment of Errors.   [91 Pa. Superior Ct.

stand and testified as to how the defendants agreed to let the contract at a price which would give them a "kick back" of about four thousand dollars and that later this money was divided between the parties to the agreement.   O'ther witnesses called by the Commonwealth testified that the contract price exceeded the fair market price of the work done by about four thousand dollars.

Under such circumstances the trial court properly instructed the jury that if the Commonwealth's figures as to the value of the work was adopted by them "you have in the case indirect corroboration" of the testimony of the member of the school board.

Corroborating testimony may be either direct or circumstantial.

Where in such a prosecution there was evidence that the architect attended meetings where the contract was discussed, participated in a scheme to prevent competitive bidding and failed to object to a grossly excessive price submitted by a favorite bidder, the question as to whether he was a party to the conspiracy was for the jury.

*Witnesses—Credibility—False testimony—Province of jury.*

The maxim "falsus in uno, falsus in omnibus" is a rule of permission and not mandatory.   It is in the discretion of the jury wholly to reject the testimony of a witness whom they believe to have testified falsely in a material particular or to accept some of his statements and reject others.

Argued October 3, 1927.   Appeals Nos. 20, 21, 22, 23, 24, 25, 26 and 27, February T., 1928, by defendants from judgment of Q. S. Luzerne County, April Sessions, 1927, No. 270, in the case of Commonwealth of Pennsylvania v. William H. Morris, David Richards, William B. Delaney, P. J. Lenahan, James J. Curry, P. F. Boyle, John A'. Reily, Ralph M. Herr, Herman Mailander.   Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.   Affirmed.

Indictment for conspiracy to defraud a school district by letting a contract at an excessive price.   Before FULLER, P. J.

Verdict of guilty upon which judgment of sentence was passed.   Defendants appealed.

*Errors assigned,* among others, were refusal to quash the indictment and the charge of the court.

*Frank A. McGuigan,* and with him *Richard B. Shridan, Evan C. Jones, Charles B. Lenahan, Abram Salsburg, Wilfrid Jones, Thomas F. Farrell* and *Robert L. Coughlin,* for appellants.

*Thomas M. Lewis,* District Attorney, and with him *John R. Hessel, Herman J. Goldberg,* Assistant District Attorneys, *M. F. McDonald* and *W. A. Valentine,* for appellees.

OPINION BY GAWTHROP, J., November 21, 1927:

Appellants were convicted and are under sentence on an indictment charging that six of them, being duly qualified and acting school directors for the school district of the Township of Hanover in Luzerne County, and one Boyle, the other school director for the district, and the defendant Herr, who was employed as an architect by the school district, and the defendant Mailander, unlawfully conspired to cheat and defraud the school district out of a sum of money amounting to about $4,000, by fraudulently and dishonestly procuring the award to the defendant Mailander of a contract to do certain work at the Thomas Jefferson School at an excessive price, and by the fraudulent and dishonest performance of the same.

A motion was made in the court below to quash the indictment for the following reason: "Before the grand jury there was no testimony produced in support of the averments contained in the indictment. This reason defendant offers to sustain by the testimony of all the witnesses whose names are endorsed upon the indictment and by the testimony of the stenographer who took the notes of the proceedings before the grand jury." The court refused to permit appellants to produce such testimony and denied the motion to quash. This action is the subject of the first and second assignments of error.

It should be observed that the contention made for appellants is not that they were not permitted to prove that no witnesses testified before the grand jury. They state in their brief "that testimony of the witnesses who testified, and the stenographer who took their testimony, showing that the testimony given had no relation whatever to the averments in the indictment, was admissible and should have been heard." Manifestly, the gravamen of the complaint is that the testimony of the witnesses whose names were endorsed upon the bill did not support the averments therein. Therefore, the question is whether a defendant has the right to allege and attempt to prove that the testimony given before a grand jury by witnesses legally competent to testify, whose names were duly endorsed upon the bill, was insufficient to make out a prima facie case. It is well settled in this State that an indictment may be quashed for matters not apparent upon the face of the record (Com. v. Bradney, 126 Pa. 199; Com. v. Green, 126 Pa. 531; and Com. v. Ross, 58 Pa. Superior Ct. 412), as where an outside party has interfered with the grand jury during its deliberations upon the case (Com. v. Bradney, supra); or where a presentment has been made upon the testimony of witnesses examined upon a different charge against another defendant and not from the personal knowledge or observation of the grand jurors (Com. v. Green, supra); or where no witnesses appear before the grand jury; or where the only witnesses who appeared before them were persons whose names were not endorsed upon the bill and therefore could not be sworn by the grand jury (Act of March 31, 1860, P. L. 427); or perhaps where the only witnesses appearing before the grand jury were legally incompetent to testify. But none of the cases decides or even intimates that a defendant may call and examine the witnesses who testified before the grand jury to prove

that their testimony before that body was insufficient to warrant the return of a true bill. Such a practice would amount to an appeal from the finding of the grand jury to the court. It would introduce a, practice in the criminal law which would be not only novel, but revolutionary. It is generally held that an indictment will not be quashed on the ground of insufficiency of the evidence where some witnesses were examined by the grand jury: 31 C. J. 808. We find no merit in these assignments.

When the case was called for trial, Boyle entered a plea of nolo contendere, took the stand for the Commonwealth and testified in detail as to how his co-school directors and Herr and Mailander entered into a corrupt bargain to have the school board let a contract to Mailander to construct a sump near the Thomas Jefferson School, which had just been comcompleted, and make a fill in the front thereof, which work would cost him about $4,000, at a price which would give the parties to the bargain a "kick-back" of about $4,000; that the contract was awarded to Mailander at $8,370; and that after the work was done and Mailander was paid, he put $4,000 into a pool made up from several sources, one of which was Herr, which was divided among the school directors. Other witnesses called by the Commonwealth testified that the contract price exceeded the fair market price of the work done by about $4,000. By the third and fourth assignments of error there is presented the question whether the trial judge erred when he charged on the subject of the corroboration of the accomplice Boyle, as follows:

"Now, gentlemen of the jury, difficult though the task may be, it is of vital importance in this case that you should determine from this perplexing and confusing evidence, if you can, what was the fair worth of that work in 1925, in order to deter-

mine whether Mailander's bid of $8,370 was reasonable or excessive, honest or dishonest, because if you adopt the Commonwealth's figures as against defendants' figures you might find that bid dishonestly excessive approximating $4,000, and you have a circumstance strongly corroborating the tale told by Boyle, upon which the Commonwealth must rely for conviction.''

''We have already said that if you adopt the Commonwealth's figures as to the worth of the work, against the figures of the defendants on comparison of the contract figures showing excess approximating $4,000, you have in the case material indirect corroboration of Boyle's testimony.''

Corroboration has been defined as testimony of some substantial fact or circumstance independent of the statement of the witness.    (14A C. J. 1429.)    The testimony of a witness who was present when the conspiracy was entered into or heard the conspirators admit the existence of the conspiracy is not the only testimony which could corroborate Boyle's story.    Corroborating testimony may be either direct or circumstantial.    The evidence fully warrants a finding by a jury that Mailander's bid was so grossly excessive that he could not reasonably expect the school board to award the contract to him at his bid, unless there had been collusion between him and the board.    The award of the contract to him at a figure which not only was double a fair price for the work but would give him a profit of about the amount of the kick-back or graft which Boyle testified was to be divided, not only tended to excite suspicion in connection with the letting of the contract, but also tended to strengthen, and hence to corroborate, Boyle's testimony to the effect that the school board conspired with the contractor to cheat and defraud the school district.    We all agree that it was proper for the trial judge so to instruct the jury.

Lastly, it is urged that error was committed in refusing to affirm points requesting instructions to the jury (1) that unless the jury was satisfied beyond a reasonable doubt that a meeting of the school directors and Mailander and Herr took place a few days after May 4th, as testified to by Boyle, there could be no conviction of any of the defendants; and (2) that under all the evidence there could be no conviction of the defendant Herr.

Herr admitted that he had been the architect for the school district for about seven years and that at a meeting of the school board held May 4, 1926, he and Mailander recommended that a fill should be constructed on the roadway on three sides of the Thomas Jefferson School. The minutes of that meeting show the adoption of a motion that Morris, the Secretary, advertise for bids to complete the fill and to dig a sump to carry off the roof water. Boyle testified to the following facts: There were present at the meeting, in addition to the school directors, John J. O'Donnell, a representative of the Taxpayers' Association, one McKeonn, a newspaper reporter, Miss Lenahan, a stenographer, Mr. Nyhart, Principal of the school, and Herr and Mailander. When the meeting was over, Morris suggested that everybody leave the room except the directors and Herr and Mailander, as they wanted "to talk a little private business." After all persons had retired, except the seven directors and Herr and Mailander, they talked about the fill and the sump. Morris suggested that the defendant Delaney, who was employed to work on the roads of Hanover Township by the Taxpayers' Association, could do the work of filling in the road, if it was not too big a job, and the township would pay him, although this work was to be included in Mailander's bid and the school directors were "to get the returns from him." When Delaney reported two or three days later that he could not do the work,

Morris called a meeting of the board at Herr's office and the seven directors met there with Herr and Mailander. At that meeting Morris asked Herr what would be the approximate cost of the fill and sump. Herr said he thought it would cost around $4,000. The suggestion was made that the job should be given to Mailander. Morris asked Herr whether he could keep outside bidders from getting the job. Herr said he thought he could. Morris said: "we ought to have a 'kick-back' of about $4,000 on that job." Herr was to let only one or two bidders bid with Mailander. The job was advertised for three weeks and Mailander got it. On May 22nd, the day before that on which the bids were due, Boyle saw the Mailander bid and another bid, both unsealed, in the hands of Morris at his home. On July 6th, all the directors, except Curry, went to a room in a hotel where a pool of money was made totalling $7,760, including $4,000 from Mailander and $500 from Herr, and divided among the directors present, each receiving about $1,000, with $400 given to Richards for Curry.

J. A. Singer, who could not read or write anything but his name and had been employed by Mailander as a teamster, testified that he went to Mailander's house in response to a request by telephone and met him; that Mailander placed before him a typewritten paper and said, "sign this." Singer signed the paper without knowledge of its contents, except that it was "for a fill at the school." He did not know how much he was asking for in the paper, which was left with Mailander. It is conceded that this paper was a proposal by Singer to do for $9,426 the work for which Mailander put in the bid of $8,370, and that Mailander furnished the certified check filed with Singer's bid as required by the specifications. The principal evidence of the Commonwealth, in addition to the above, consisted of the minutes of the school board showing official ac-

tion upon the contract involved; of checks showing payment thereon; of testimony to establish that the contract price was grossly in excess of the fair worth of the work done; and of evidence that the plans and specifications drawn by Herr did not provide for a fill of the roadway only on three sides of the retaining wall at the school, authorized by the minutes of May 4th, but provided for the construction of a driveway or street thirty-two feet wide and extending two hundred eight feet beyond the wall to be supported.

After a careful review of the record, we are of one mind that the question whether Herr was a party to the conspiracy was for the jury. Although as an architect of considerable experience he must have known that the contract price was grossly excessive, it does not appear that he ever raised any objection to it. The only fair inference from all the evidence is that from the date of the after-meeting of the school board held May 4th, he was an active party to the conspiracy. We are not impressed by the argument in support of the proposition that there could be no conviction of any of the appellants unless the jury believed that a meeting was held at Herr's office on May 7th, as testified by Boyle. As already stated, Boyle testified that at the after-meeting on May 4th, when all of appellants were present, the suggestion was made by Morris that if Delaney did the work on the sump and fill, "it was to be put on Mailander's bill and we were to get the returns from Mailander." This evidence warrants a finding by the jury that the conspiracy had its inception at that meeting and the evidence as to the subsequent conduct of appellants, excluding Boyle's testimony as to the meeting at Herr's office, warrants the jury's finding that all present were parties thereto. It is urged upon us that if the meeting at Herr's office was not held, Boyle was guilty of wilful and corrupt perjury in a highly material part of his testimony, and

that the maxim, falsus in uno, falsus in omnibus, applies to his testimony and, therefore, the jury should not have been permitted to convict upon his testimony and a verdict and judgment based upon such testimony cannot stand. There is some authority for the contention that where a witness has wilfully and knowingly perjured himself as to a material point, the jury are bound not to give weight to his testimony unless corroborated by other evidence, but according to the better reasoning and the weight of authority, the above maxim is a rule of permission and not a mandatory one. It is in the discretion of the jury wholly to reject the testimony of a witness whom they believe to have testified falsely in a material particular, or to accept some of his statements and reject others. (See Jones on Evidence, Ed. 1908, pg 1166, and cases there cited.) Therefore, the trial judge would not have been justified in affirming appellant's fifth point. Our conclusion is that defendants had a fair trial and the record discloses no reversible error.

All the assignments of error are overruled and the judgments are affirmed, and it is ordered that the appellants appear in the court below at such time as they may be there called and that they be by that court committed until they have complied with the sentence, or any part of it, which had not been performed at the time the appeals in this case were made a supersedeas.