Commonwealth v. Halleron, Appellant.

584

Argued November 8, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Alexander J. Bielski,* for appellant.

*Samuel Strauss,* Assistant District Attorney, with him *William S. Rahauser,* District Attorney and *Robert Van der Voort,* First Assistant District Attorney, for appellee.

OPINION BY RHODES, P. J., January 14, 1949:

Defendant, Owen M. Halleron, was indicted and tried for blackmail in the Court of Quarter Sessions of Allegheny County. The jury returned a verdict of guilty.

On or about December 1, 1947, defendant contacted Mrs. Laura H. Painter, the widow of a prominent banker of McKeesport, Allegheny County, Pennsylvania. Mr. Painter had died in 1944. Defendant also had lived in McKeesport for many years, but he had not previously met Mrs. Painter. After one telephone call and an unsuccessful visit to her home, defendant saw Mrs. Painter on December 3, 1947, and informed her that he had seen pictures of her late husband seated in an automobile

with his secretary in a compromising position. The pictures, according to defendant, were in the possession of a Mr. Newlin of New York, who threatened to send copies to 150 persons in McKeesport unless he (Newlin) received $20,000 for the pictures. At the next meeting of defendant and Mrs. Painter, the amount demanded, allegedly by Newlin, was reduced to $15,000, and then to $7,500. Although, according to defendant, Newlin wanted cash, Mrs. Painter gave her personal check for $7,500 payable to defendant, dated December 5, 1947. The following day, Saturday, December 6, 1947, defendant appeared at the Peoples City Bank of McKeesport, on which the check was drawn, and received $7,500 in fifty and one hundred dollar bills.

On December 9, 1947, defendant reported to Mrs. Painter that he had paid the money to Newlin in a Cleveland hotel, and that Newlin had destroyed the negative in defendant's presence. Mrs. Painter testified that defendant had agreed to bring the pictures and the negative to her. She remained concerned as to whether the pictures had been destroyed. Later she told her story to Detective Edward H. Kenney of the McKeesport police. Thereupon, Mrs. Painter invited defendant to her home on the afternoon of January 24, 1948, and she again expressed concern over the destruction of the pictures. Detective Kenney, who was concealed, overheard their conversation. Kenney then placed defendant under arrest.

It was the theory of the Commonwealth that Newlin was a fictitious character, and that defendant was the blackmailer. The Commonwealth was permitted to show that defendant had been unemployed for several years; that at the time he received the check from Mrs. Painter he had outstanding financial obligations; and that he had made substantial payments to various creditors in cash shortly after cashing the $7,500 check.

Defendant testified that he had been introduced to Newlin by a former mayor of McKeesport; that he had

several meetings with Newlin at Newlin's request; and that, on a trip to Cleveland, where he paid Newlin the $7,500 in cash, he received the pictures and the negative which he immediately burned in the washroom of a hotel. A friend of defendant, who had been a resident of McKeesport, corroborated defendant as to the meeting with Newlin in the lobby and later in the washroom of the Statler Hotel in Cleveland. Defendant asserted that he was the innocent go-between, that he acted as such at Mrs. Painter's request and solely in order to help her, that he received no money for his services, and that he was not guilty of any wrongdoing.

The court below refused defendant's motion for a new trial and his motion in arrest of judgment. Defendant has appealed from the judgment and sentence.

Appellant's third and eighth assignments of error relate to the refusal of the court below to quash the indictment. This motion was based upon the allegation that the only witness called to testify before the grand jury was Edward H. Kenney, the city detective, who made the information upon "information received, all of which complainant believes to be true and correct". Appellant contends that the indictment should have been quashed because the only testimony upon which the grand jury returned a true bill was hearsay and therefore incompetent testimony. While an indictment may be quashed where no witnesses appear before the grand jury (*Com. v. Brownmiller*, 137 Pa. Superior Ct. 261, 268, 9 A. 2d 155), or where the only witness called was incompetent, it will not be quashed where some competent witnesses were examined by the grand jury (*Com. v. Morris*, 91 Pa. Superior Ct. 571, 574, 575; *Com. v. Vancel*, 99 Pa. Superior Ct. 40, 41, 42; *Com. v. Spallone (No. 2)*, 154 Pa. Superior Ct. 290, 293, 35 A. 2d 731). The witness Kenney, who testified before the grand jury, was unquestionably competent, and it cannot be presumed that he produced no testimony upon which an indictment could be based. The witness may well have had personal

knowledge in addition to the information received. *Com. v. Deppen*, 52 Pa. D. & C. 442, 444. The motion to quash the indictment was properly overruled.

In the fourth assignment of error appellant complains of that portion of the charge of the court wherein the trial judge stated it to be an admitted fact that Mrs. Laura Painter was blackmailed. The trial judge in his charge said: "There are, as I believe counsel for the defendant told you, possibly also the District Attorney, some things in this case about which there is no contradiction and the first and outstanding item of evidence to that effect is that Mrs. Laura Painter was blackmailed. There is no contention on the part of the defense that she was not blackmailed. The defense contention is that the defendant had nothing to do with the blackmailing as a guilty participant, but there is no question at all, and you should start with that, of course, that there was blackmail committed upon Mrs. Laura Painter." Appellant refers to this portion of the charge as an invasion by the court of the jury's function as a fact-finding body, and asserts that it amounted in part at least to a directed verdict of guilty. Appellant's contention in this respect is entirely without merit. The charge of the court, including that portion of which appellant complains, contained a substantially accurate summation of the evidence, and we find no basis for the suggestion that there was any interference with the jury's function. It was admitted that $7,500 was extorted from Mrs. Painter, and that appellant received this money in some capacity. Previously, in the charge the trial judge carefully defined the crime of blackmail, and he explained to the jury appellant's theory of the case. The trial judge instructed the jury as follows: "If the defendant in this case, in the $7500 transaction with the prosecuting witness, Mrs. Laura Painter, was merely a go-between seeking only to be helpful to the victim and without guilty intent and participation in the blackmail scheme, he should be acquitted, but if he was

actually himself the blackmailer and extortioner, as the Commonwealth contends, or was acting with another or others in that capacity, then he would be guilty under the charge of the indictment." The trial judge in his charge fully reviewed the evidence presented by the defense as well as that introduced by the Commonwealth. The charge as a whole gave proper weight to the allegations of the defense and left the jury free to decide the factual questions. " 'Challenged statements must be viewed not as isolated utterances to a jury, but with due regard to their probable effect when considered with explanatory remarks which preceded or followed the statements in question.' " *Com. v. Holley,* 358 Pa. 296, 303, 56 A. 2d 546.

The fifth assignment of error questions the admissibility of the evidence introduced by the Commonwealth that appellant paid off certain financial obligations shortly after cashing the check for $7,500. The Commonwealth established that, on December 6, 1947, the same day that appellant cashed the $7,500 check, he paid in cash seven delinquent installments totaling $391.50 on his F.H.A. mortgage. About six o'clock on the same day, appellant also paid in cash a delinquent grocery bill in the amount of $142.41, although he usually paid these grocery bills by check. A check for $107 to the same grocer had been returned for lack of funds a month previous. On the same Saturday morning appellant deposited $200 in his own account and a like amount in his wife's account in the Union National Bank of McKeesport; both deposits were made in cash. There was evidence presented by appellant that such payments and deposits were not unusual, and that he had received a loan of $1,500 from his sister on December 4, 1947. We are of the opinion that the testimony, which is the subject of the fifth assignment, was relevant. Appellant was unemployed and short of funds. The principal factual question was whether appellant was an innocent intermediary, or whether he, as a guilty participant, received and retained

any or all of the money paid to him by Mrs. Painter. On this issue the evidence that he made deposits and paid substantial amounts to his creditors on the very day he cashed the $7,500 check was relevant and admissible.

The sixth assignment of error pertains to the action of the trial judge in admitting in evidence certain photographs taken for the Commonwealth by a professional photographer. These photographs were taken from the right side of an automobile and showed a woman sitting at the wheel and a man on the front seat beside her. They were offered by the Commonwealth, together with the testimony of the photographer who took them, to impeach the credibility of the testimony of appellant describing the alleged photographs of Mr. Painter and his secretary, and to demonstrate that appellant had described a photographic impossibility. In describing the alleged negative which Newlin was said to have shown him, appellant stated that the picture was taken from the right side of the automobile, that the door was closed, that the window was down, and that it was summer as the ground and grass were evident in the lower part of the picture. It was the Commonwealth's contention that it would be impossible to take a photograph some distance from an automobile showing the parties inside in the various phases of indecent exposure described by appellant. It was further contended that such a photograph could not possibly include a view of the ground beside the right door of the automobile. The trial judge instructed the jury as to the limited use of these photographs as impeaching evidence. The determination of what evidence shall be admitted in rebuttal is largely within the discretion of the trial judge. Great latitude is permitted in the cross-examination of a defendant, and any material evidence tending to contradict a defendant's denial of the commission of a crime is relevant and admissible. *Com. v. Heckman,* 113 Pa. Superior Ct. 70, 75, 172 A. 28; Henry, Pa. Trial Evidence (1940), §484, p. 756. In the present case the issue was not whether the parties

in the automobile were in a compromising position, but rather whether the pictures and negative described by appellant existed or were merely figments of his imagination. In view of the issues in this case, and under the circumstances, the trial judge did not err in admitting this evidence for the purpose of testing appellant's credibility. Appellant in sur-rebuttal offered six photographs, taken by his own expert, for the purpose of showing that such photographs, as he described and said were in the possession of Newlin, did actually exist.

The subject of appellant's seventh assignment of error is Commonwealth's exhibit No. 2. This was the stub of the $7,500 check of December 5, 1947, payable to appellant, on which stub Mrs. Painter had written "for Newlin N Yk R. C. Pictures I think he is a blackmailer." When Mrs. Painter was asked to read this stub to the jury, appellant's trial counsel objected, saying "The stub speaks for itself." Appellant's counsel, when asked by the trial judge, "All right. You have no objection to its admission in evidence?" replied, "No, I have no objection to it." Further, the implication from Mrs. Painter's testimony on cross-examination and the court's charge is that Mrs. Painter was referring to Newlin as a blackmailer and not to appellant. No objection was made at the time, and the question was not raised in the court below. Ordinarily such matters will not be considered by us on appeal unless a basic and fundamental error is involved. *Com. v. Bird,* 152 Pa. Superior Ct. 648, 651, 33 A. 2d 531. However, considering the objection on its merits, we do not think the trial judge erred in admitting this evidence, as appellant, through his counsel at the trial, asked to have the stub admitted in aid of his defense that Newlin and not appellant was the blackmailer.

All assignments of error are overruled.

The judgment is affirmed, and the record is remitted to the court below, and it is ordered that defendant ap-

pear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with the sentence, or any part thereof, which had not been performed at the time the appeal was made a supersedeas.