Commonwealth, Appellant, *v.* Dessus.

Argued October 6, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Joseph M. Smith,* Assistant District Attorney, with him *Alan J. Davis,* Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellant.

*Robert N. C. Nix,* with him *Domenick Vitullo,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 15, 1966:

This is an appeal by the Commonwealth from the Order entered by the Court of Oyer and Terminer which quashed an indictment charging Dessus with murder.

In the early morning of April 3, 1966, Lena Alexandroff, a 79-year-old grandmother living in Philadelphia, and her 44-year-old daughter and her 14-year-old granddaughter (who lived with her) were raped, and as a result of the bodily injuries received by the grandmother, she died on April 22, 1966. On May 10, 1966,* a magistrate held Dessus for the Grand Jury, and on the same day defendant was indicted by the Philadelphia Grand Jury for the murder of Lena Alexandroff.

On August 16, 1966, defendant presented a motion to the lower Court to suppress a confession which defendant had given to Detective Timlin, and also a motion to quash the murder indictment because (a) it was based upon hearsay testimony and (b) a denial of defendant's right to challenge the indicting Grand Jury because the extensive and prejudicial publicity about rape in general, and these rapes in particular, *may* have created a state of mind on their part which prevented them from acting impartially. The lower Court held a hearing on these motions. Detective Timlin testified in open Court that he was the investigating detective in the above-mentioned crimes; that he was the only witness who appeared before the Grand Jury, and that he did not see any of the alleged crimes committed. Timlin further testified that he saw the dead body of

---

* Prior thereto, defendant had been indicted for the rape of the grandmother, the daughter and the granddaughter, and for robbery and burglary in connection with those offenses.

the grandmother, he examined the house and place where the murder occurred and the physical evidence which was obtained by the police, including the bloody garments of the victims and of the defendant. He also observed the physical condition of the defendant, including blood and scrapes around his knuckles, and likewise the physical conditions of the victims. In addition, defendant gave an oral statement to Timlin.

Detective Timlin testified that prior to taking defendant's statement he informed defendant that he did not have to say anything, and that anything he said could be used for or against him if the case went to Court, and that he could have the advice of counsel. Defendant responded by both nodding his head affirmatively and orally saying that he knew all that. After the hearing, the lower Court, relying on *Miranda v. Arizona*, 384 U.S. 436, suppressed defendant's statement on the ground that defendant was not informed that if he was indigent he was entitled to have counsel appointed for him by the Court.

On September 28, 1966, after extensive argument—during which the Commonwealth reiterated its position (1) that the Court could not directly or indirectly inquire into what evidence was presented to the Grand Jury, and (2) that an indictment could be based on hearsay testimony—*the lower Court ordered that the murder indictment be quashed because it was based upon hearsay testimony.*

Although there was no evidence that Dessus's statement to Timlin was read by or shown by Timlin to the Grand Jury, and although the Grand Jury proceedings were held and the murder indictment was found prior to June 13, 1966, the date of *Miranda v. Arizona*, 384 U.S., supra,* the lower Court assumed that defendant's statement had been submitted by Timlin to the Grand

* See also, *Johnson v. New Jersey*, 384 U.S. 719.

Jury and held that under *Miranda v. Arizona,* supra, Timlin's statement was inadmissible not only at the trial of the case but before the Grand Jury. The Commonwealth contends that defendant's statement was, even under *Miranda v. Arizona,* admissible before the Grand Jury. Since the Commonwealth has not appealed from the suppression of this statement, it is unnecessary for us to pass upon this question.

The Commonwealth has appealed, we repeat, from the Order of the lower Court quashing the indictment of Dessus for murder because it was found and based upon hearsay testimony. It was error to quash the indictment on this ground.

The law is well settled in Pennsylvania that an indictment can be found by a Grand Jury based upon hearsay testimony or upon evidence which was incompetent or inadequate to make out a prima facie case. *Commonwealth v. Morris,* 91 Pa. Superior Ct. 571, 573-575; *Commonwealth v. Halleron,* 163 Pa. Superior Ct. 583, 586, 63 A. 2d 140; *Commonwealth v. Feenix,* 6 Pa. D. & C. 15;** *Commonwealth v. Coyle,* 415 Pa. 379, 396, 203 A. 2d 782 (in which the Court cited with approval *Commonwealth v. Deppen,* 52 Pa. D. & C. 442, and *Commonwealth v. Halleron,* 163 Pa. Superior Ct., supra, and *Commonwealth v. Kumitis (No. 2),* 17 Pa. D. & C. 2d 445, 451, affirmed 190 Pa. Superior Ct. 133, 151 A. 2d 653, and *Costello v. United States,* 350 U.S. 359). Accord: *United States v. Grosso,* 358 F. 2d 154; *Lawn v. United States,* 355 U.S. 339; *Holt v. United States,* 218 U.S. 245.

In an exceptionally able Opinion by Judge, subsequently Chief Justice, HORACE STERN in *Commonwealth v. Feenix,* the Court said that "the proposition [that an indictment could be quashed because founded upon

---

** For exceptions, see *Commonwealth v. Halleron,* 163 Pa. Superior Ct., supra; *Commonwealth v. Kumitis (No. 2),* supra; *Commonwealth v. Kilgallen,* 379 Pa., infra.

hearsay testimony or information] is a startling one that would revolutionize the practice of criminal law" and "would . . . introduce into the administration of the criminal law a novel and vicious practice."

In addition to the reasons set forth at length by Judge STERN in *Commonwealth v. Feenix,* supra, it is clear that in the absence of very exceptional circumstances the filing of a motion to quash would unduly obstruct the administration of criminal justice, would destroy the secrecy of Grand Jury proceedings which has been recognized for centuries, would enable an accused to hear and learn before trial the Commonwealth's entire case, and would permit discovery in criminal cases beyond that permitted in Rule 310 of the Rules of Criminal Procedure. See *Commonwealth v. Caplan,* 411 Pa. 563, 192 A. 2d 894, *Commonwealth v. Wable,* 382 Pa. 80, 86, 114 A. 2d 334.

Appellee relies, as did the lower Court, on *Commonwealth v. Kilgallen,* 379 Pa. 315, 108 A. 2d 780. *Kilgallen* is clearly distinguishable. That case merely decided (1) that an indictment cannot be found or based *upon the judicially-compelled testimony of the defendant* because it would violate Article I, §9, of the Pennsylvania Constitution, which provides that a person "cannot be compelled to give evidence against himself," and also the Fifth Amendment to the United States Constitution which provides: ". . . nor shall [any person] be compelled in any criminal case to be a witness against himself . . ." and (2) for these reasons the indictment must be quashed.

The decision and the reasoning in *Costello v. United States,* 350 U.S., supra, is so sound and analogous that we adopt it and apply it to the instant case. In *Costello,* the Court said (pp. 359, 360, 361-63): "We granted certiorari in this case to consider a single question: 'May a defendant be required to stand trial and a conviction be sustained where only hearsay evidence

was presented to the grand jury which indicted him?'
350 U.S. 819.

"Petitioner, Frank Costello, was indicted for wilfully attempting to evade payment of income taxes due the United States for the years 1947, 1948 and 1949. The charge was that petitioner falsely and fraudulently reported less income than he and his wife actually received during the taxable years in question. Petitioner promptly filed a motion for inspection of the minutes of the grand jury and for a dismissal of the indictment.

. . .

"The Court of Appeals affirmed [the decision of the lower Court], holding that the indictment was valid even though the sole evidence before the grand jury was hearsay. Petitioner here urges: (1) that an indictment based solely on hearsay evidence violates that part of the Fifth Amendment providing that 'No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .' and (2) that if the Fifth Amendment does not invalidate an indictment based solely on hearsay we should now lay down such a rule for the guidance of federal courts. See McNabb v. United States, 318 U.S. 332, 340-341.

"The Fifth Amendment provides that federal prosecutions for capital or otherwise infamous crimes must be instituted by presentments or indictments of grand juries. *But neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act.** The grand jury is an English institution, brought to this country by the early colonists and incorporated in the Constitution by the Founders. There is every reason to believe that our constitutional grand jury was in-

---

* Italics throughout, ours.

tended to operate substantially like its English progenitor. The basic purpose of the English grand jury was to provide a fair method for instituting criminal proceedings against persons believed to have committed crimes. Grand jurors were selected from the body of the people and their work was not hampered by rigid procedural or evidential rules. In fact, grand jurors could act on their own knowledge and were free to make their presentments or indictments on such information as they deemed satisfactory. Despite its broad power to institute criminal proceedings the grand jury grew in popular favor with the years. It acquired an independence in England free from control by the Crown or judges. Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice. And in this country as in England of old the grand jury has convened as a body of laymen, *free from technical rules, acting in secret,* pledged to indict no one because of prejudice and to free no one because of special favor. As late as 1927 an English historian could say that English grand juries were still free to act on their own knowledge if they pleased to do so. And in 1852 Mr. Justice Nelson on circuit could say 'No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof . . .' United States v. Reed, 27 Fed. Cas. 727, 738.

"In Holt v. United States, 218 U.S. 245, this Court had to decide whether an indictment should be quashed because supported in part by incompetent evidence. Aside from the incompetent evidence 'there was very little evidence against the accused.' The Court refused to hold that such an indictment should be quashed, pointing out that 'The abuses of criminal practice

would be enhanced if indictments could be upset on such a ground.' 218 U.S., at 248. *The same thing is true where as here all the evidence before the grand jury was in the nature of 'hearsay'.* If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."

Appellee further contends that under the decisions and under Rule 203 of the Rules of Criminal Procedure an accused has a right to challenge the array and a right to examine each grand juror on his voir dire, and consequently the indictment should be quashed for these additional reasons. Moreover, appellee in his oral argument to this Court contends for the first time that his Constitutional rights were violated because he was indicted without reasonable opportunity to challenge the grand jury array and to examine each individual grand juror on his voir dire. We shall consider each of these contentions separately.

### Voir Dire

We agree with the Commonwealth that an accused has no right to subject a grand jury or grand jurors to a voir dire. *Brown v. Commonwealth,* 76 Pa. 319; *Commonwealth v. Feenix,* 6 Pa. D. & C., supra; *Estes v. United States,* 335 F. 2d 609, 5th Circuit, cert. de-

nied, 379 U.S. 964; *United States v. Belvin,* 46 Fed. 381 (E.D. Va. 1891).

In *Brown v. Commonwealth,* supra, Chief Justice AGNEW, speaking for a unanimous Court, said (pages 336-337) : "The second, third, fourth and fifth errors *raise the single question whether, upon a challenge to the polls of grand jurors, the prisoner will be permitted to examine them on their voir dire* to support his objections. The court was willing to receive other proof. As to petit jurors, who try the prisoner, and therefore should be above all exception, the rule is to permit them to be examined on their voir dire to prove objections to their competency. But the reason does not hold good as to the grand jurors, who do not try the prisoner, but merely inquire on the evidence of the Commonwealth alone, whether there is sufficient probable ground of the commission of the offence charged in the indictment laid before them. *It would be impossible to conduct the business of the Courts of Quarter Sessions and Oyer and Terminer, if every person indicted for an offence could claim the right of polling the grand jurors on their voir dire in order to purge the panel. . . .* A due regard for public policy, as well as for the interests of justice and the nature of the inquiry, *forbids that grand jurors should be polled and tried in this manner.* If the prisoner have evidence to purge the panel, let him produce it."*

## Rule 203 and Constitutional Issues

With respect to the Constitutional question which appellee raised for the first time at oral argument before this Court, the *general* rule is that an appellate Court will not consider a question or a point or an ob-

---

* We may add that it is well settled that a grand juror may be challenged by a defendant for cause. *Rolland v. Commonwealth,* 82 Pa. 306, 322; *Commonwealth v. Craig,* 19 Pa. Superior Ct. 81, 93.

jection which was not made or presented in the lower Court. However, this general rule is inapplicable (1) when the question or point is raised by appellee or (2) by the Court itself, or (3) where public policy or the interests of justice require a consideration and determination thereof.

The new Rule 203 of the Rules of Criminal Procedure and the question of the violation or circumvention of defendant's Constitutional rights because the speedy indictment by the grand jury gave him no reasonable opportunity to challenge the grand jury array or to prove that one or more of the grand jurors should be disqualified for cause are of such tremendous importance that we shall decide both of these questions.

Rule 203* provides:

"*Rule 203. Objections to Grand Jury and Grand Jurors*

"Either the attorney for the Commonwealth or a defendant who has been held to answer may challenge the array of jurors or an individual grand juror. A challenge to the array may be made only on the ground that the grand jury was not selected, drawn, or summoned substantially in accordance with law. An individual grand juror may be challenged on the ground that he is not legally qualified or that a state of mind exists on his part which may prevent him from acting impartially. All challenges must be made before the jurors are sworn unless opportunity did not exist prior thereto; *in any event a challenge must be made before the bill of indictment is submitted to the grand jury.* All challenges shall be heard and determined by the court. If a challenge to the array is sustained, the grand jury shall be discharged, if a challenge to an individual grand juror is sustained, he shall be retired or discharged and the court may replace him from the persons drawn or selected for grand jury service."

* Adopted June 30, 1964; effective January 1, 1965.

Appellee contends that Rule 203 gives an attorney for the Commonwealth or a person accused of crime the right and power to challenge each and all of the grand jurors on voir dire. We repeat, *this is not and never has been the law of Pennsylvania.* See *Brown v. Commonwealth,* and additional cases, supra. We believe that it was not the intent of the Rule to permit a challenge of the array *on voir dire* or an examination of the grand jurors *on voir dire.*

It will be noted that Rule 203 provides: ".... *in any event, a challenge must be made before the bill of indictment is submitted to the grand jury."* If Rule 203 is interpreted literally and strictly, defendant-appellee's contention (viz., that his right to challenge the array and the individual grand jurors was violated) cannot be sustained, since his challenge came *after* the grand jury found the bill of indictment. While the law must not only permit but also encourage the speedy indictment and trial of all persons accused of crime, and especially those accused of serious crimes, it must not deprive an accused of any of his legal or Constitutional rights—in this case the right to promptly (a) challenge the array of the grand jury and (b) prove by legally competent evidence that one or more of the grand jurors should be disqualified for cause. While these rights may be waived by a defendant, we should not permit them to be circumvented.

This case is unusual in that a defendant far more frequently contends that his Constitutional right to a *speedy* trial* has been denied. To preserve each of these at times conflicting rights, the draftsmen of Rule 203 were trying to sail between Scylla and Charybdis, a difficult feat of legal navigation.

Under all the circumstances, we shall interpret the Rule liberally, in order to preserve, if promptly exer-

---

* Sixth Amendment, United States Constitution; Pennsylvania Constitution, Article I, §9.

cised, defendant-appellee's legal and Constitutional right to challenge the grand jury array, or an individual grand juror or grand jurors for cause.

In the instant case we believe that defendant's opportunity for challenging within a reasonable time the array or proving by legally competent evidence that one or more of the grand jurors should be disqualified for cause, did not exist before the bill of indictment was submitted to the grand jury and consequently defendant was effectively denied due process of law.

Solely for this reason, the Order quashing the indictment* of the defendant for murder is affirmed.

---

* Of course, the quashing of this indictment will not prevent a new and proper indictment to be found or made by a legally qualified grand jury.