## Commonwealth v. Gatoweski

*Howard R. Berninger*, District Attorney, for Commonwealth.

*Thomas J. Evans,* for defendant.

KREISHER, P. J., March 17, 1958.—At approximately 2:10 a.m. on the morning of October 27, 1957, the above captioned defendant and one Alex Olah, Jr., were involved in an intersection accident at Orange and Eaton Streets in the Borough of Berwick, this county.

A borough policeman was summoned who thereupon made an investigation, and on October 31, 1957, lodged an information before a borough justice of the peace charging defendant with failure to yield the right of way in violation of The Vehicle Code of May 1, 1929, P. L. 905, art. X, sec. 1014, subsec. (c), as amended, 75 PS §573, which provides as follows:

"(c) The driver of vehicle entering a through highway or stop intersection, which has been established as such under provisions of this act, shall yield the right of way to all vehicles approaching in either direction on such through highway. This provision shall not operate to relieve the driver of any vehicle being operated on a through highway from the duty to drive with due regard for the safety of vehicles entering such through highway, nor shall it protect the driver of any vehicle on a through highway from the consequence of an arbitrary exercise of such right of way."

Defendant waived a hearing and the matter was called before the court by the district attorney.

Counsel for defendant before hearing filed a motion to quash the information for the following reasons:

"1. The information was defective in its entirety in that it violates Article I, Section VIII, of the Constitution of Pennsylvania, being made on oath by the Prosecutor as though he were an eye witness, and failing to disclose that it is based upon information and further, in failing to state his belief in the truth of the information received. Commonwealth v. Cecchino, 78 D. & C. Reports, 143; Commonwealth v. Hockenberry, 72 D. & C. Reports, 274."

The court deferred ruling on the motion, proceeded to hear the testimony at three separate hearings, which has now been transcribed and filed, and the matter is now before the court for disposition.

We first take up defendant's motion, but in order to pass upon it the facts of the case are essential and since the Commonwealth has offered into evidence without objection as Commonwealth's exhibit #1 a written statement of defendant's version of his conduct, we will consider the facts therein set forth not only worthy of credit and belief, but also the most favorable version possible for defendant.

Said statement dated November 27, 1957, reads as follows:

"I, George Gatoweski, state that 45 years of age, single, and live at 18 Crary St., Shickshinny, Pa. I am employed by the Glen Alden Coal Co. I own and operate a 1957 Chevrolet, 2 dr. sedan, 1957 Pa. license #9H171. I have a 1957 Pa. operator's license #2814046 (plate #5473133). I have been driving for about the past 20 years. I have never envolved in an accident until 10/27/57.

"On 10/27/57, at about 2:00 A.M. I was alone and driving my 1957 Chevrolet when I was in an accident. The other car was a 1953 Oldsmobile, owned and operated by Alex Olah, Berwick, Pa. He had 2 other young fellows with him. I don't know their names. This accident happened at the intersection of Eaton St. and Orange St. Berwick, Pa. Orange St. is a blacktop st., about 25 ft. wide and runs east and west. Eaton St. is a blacktop st. about 25 ft. wide and runs north and south. There is a stop sign on Eaton St. but none on Orange Street. The weather was clear and dry. The roads were dry. Visibility was good. There is a home on the northeast corner of this intersection almost out to Orange St. There were cars parked on the north and south side of Orange St., east of the intersection. The

first car was parked about 25 ft. east on the intersection and on the north side of Orange St. There were other cars parked behind this one. I was traveling south on Eaton St. and stopped where the stop sign is, about 10 ft. north of the intersection. I looked to my left, behind a pole and these parked cars. I couldn't see any car lights coming west on Orange Street. I then looked to my right and couldn't see any cars coming east on Orange St. When I was stopped at the stop sign, I could see about 50 ft. east on Orange St. When I didn't see any cars coming I shot out onto Orange St. and started to make a left turn onto Orange St. When I got my front end just about pointing east and my backend starting to straighten out, I saw Alex Olah's car for the first time. He was coming west on Orange St., on his right side of the road and about 25 ft. east of me when I saw him for the first time. His lights were coming right at me. I knew there was going to be an accident when I first saw him. I tried to speed out of the way but Alex Olah hit me at my right rear fender.

"When I first saw his lights they were coming straight but all of a sudden Olah's car came at me at a angle. I really don't know what part of his left side hit my left rear fender. He then went across Eaton St. and hit a pole and went down in a little ditch. My car stopped in the intersection facing east on Orange Street. It was in the westbound lane of Orange St. I got out of my car. I saw one of the fellows out of the car. I asked if they were hurt and one fellow said no. Alex Olah asked me if I was hurt and I said no. Alex Olah said that he wanted to call a cop. I told him to call one. Some lady near the scene, called the Berwick Police. They came and investigated. Olah was arguing with me and the police officer told us that if we didn't stop arguing he would run the both of us to the

Police Station. While the cop was there Olah argued a little with him too. After a while Alex Olah came to me and shook my hand. He said he was sorry that he was arguing with me. Olah's car was damaged on the left side and then on the right side after he sideswiped the pole after he hit me.

"There were no other witnesses. The next day my left arm was sore. I went to Dr. Konic, Shickshinny, Pa. He gave me some ointment for my arm and some pills. I only went to him one time. I haven't been to any doctor since. I did lose one day from work because of this accident. I average about $22.00 a day, take home pay.

"I drove my car away. Olah's car was towed away. I was sent a complaint for failure to yield the right of way. I am taking this to traffic court though.

"I was on my way home from my girl's house in Berwick when this happened. I have used this intersection about three times a week for the past six or seven months. This is a very bad intersection. You have to edge out onto Orange St. from Eaton St. because of these parked cars on Orange St. I would have no idea how fast Olah was going when he hit me.

"In my opinion I think both of us were at fault. Him for probably going too fast to stop and me for not shooting down Eaton St. on the other side of Orange St. maybe we both might have avoided this accident.

"Have you read the above 3 pages?      Yes

"Are they true and correct?      Yes

(s)  George R. Gatoweski."

From the foregoing, we at once observe the prosecuting officer was at the scene of the accident shortly after it occurred. He not only observed the mute evidence with respect to the damage to the cars and where they came to rest, the weather and roadway conditions and so forth, but more important he interviewed the

parties, including defendant, and thereby obtained the facts laid in the information.

In the cases cited by counsel for defendant, a reading thereof will at once reveal that in those cases the information was lodged on pure rumor received from persons not involved, which made it a matter of hearsay, and under those circumstances we have no fault to find with the conclusions therein reached. However, the case at bar is definitely different and is in our opinion in accord and controlled by the conclusion reached in the case of Commonwealth v. Rushton, 6 Chester 168, wherein it is stated on pages 169-170 of the opinion as follows:

"An information to support a criminal prosecution, whether summary or otherwise, does not have to be made 'on information received'.

"If the affiant makes it in language indicating that facts are within his own knowledge the requirements of the Constitution are met. The warrant issued thereon is not issued 'without probable cause, supported by oath or affirmation subscribed to by affiant', as provided in the above section of the Constitution. That is the situation here. And when such an information is made testimony may not be received in an endeavor to establish that the information was in fact made 'on information received' and therefore in a manner inconsistent with affiant's oath. The testimony here taken over objection was accordingly not considered. If defendant is prejudiced by a false oath in that regard he has another remedy.

"We have examined and considered the case of Commonwealth v. Hockenberry, 72 D. & C. 274, and the cases therein cited. We are unable to agree with the reasoning upon which the decisions therein are reached save in the case of Commonwealth v. Deppen, 52 D. & C. 442. We believe the correct and here controlling principles of law are as above stated."

Likewise, in the case of Commonwealth v. Walborn, 5 D. & C. 2d 241, on page 242 of the opinion, it is stated:

"The third contention is based upon the cases of Commonwealth v. Cicchino, 78 D. & C. 143, and Commonwealth v. Hockenberry, 72 D. & C. 274, which in turn are based upon Commonwealth v. Deppen, 52 D. & C. 442. In our opinion these cases are inapplicable, because the information which was made June 6, 1955, was based upon information which the prosecuting officer had obtained from defendant himself at the time of the accident on the 1st day of June, 1955, was direct evidence and the strongest evidence of imputed guilt: Commonwealth v. Turner, 358 Pa. 350 (362) ; Commonwealth v. Carluccetti, 369 Pa. 190. The information, therefore, was not hearsay evidence but direct evidence of which the officer 'had personal knowledge'. See Commonwealth v. Deppen, supra, at page 444, and Commonwealth v. Halleron, 163 Pa. Superior Ct. 583 at page 586."

The above quoted cases are much more recent than the cases relied upon by counsel for defendant and in our opinion, authority for the dismissal of defendant's motion to quash.

Taking up the alleged violation the above quoted section of The Vehicle Code places a mandatory duty upon the driver of the vehicle proceeding on the stop street to yield the right of way to all vehicles approaching in either direction on the through highway. Our appellate courts have declared that this duty placed upon the driver of the automobile on the stop street requires him to be highly vigilant and very certain of his ability to proceed in safety before attempting to negotiate the intersection.

In the case of Noyes v. Sternfeld, 164 Pa. Superior Ct. 461, on pages 465 and 466, it is stated: The driver of an automobile attempting to cross a through high-

way from a stop street is "under the duty of yielding the right of way to all vehicles approaching in either direction on such through highway, unless so far in advance that in the exercise of reasonable care and prudence he was justified in believing he could cross ahead of the approaching vehicle without danger of collision."

In other words, it is unlawful to enter an intersection from a stop street in the face of an approaching vehicle where the possible margin of safety is so close that a reasonably prudent person would not be justified in believing he had sufficient time to cross.

Likewise, the operator of the motor vehicle approaching on the stop street has not only the duty to stop and look before proceeding, but he is also under the duty to see any vehicle approaching in either direction on the through highway because our appellate courts have said that it is vain for a person to say he looked and did not see something that was obviously present, and this rule may not be avoided by the fact that the view of the operator of the vehicle on the stop street was obstructed by buildings, poles, trees, hedges, parked cars or a rise in the elevation or some other object because under these conditions the duty imposed upon the operator becomes even greater, since the operator of the vehicle on the through street has the right to assume that persons approaching on intersecting streets will not only obey the stop signs but will yield the right of way to the car on the through street: Ketzel v. Lazzini, 163 Pa. Superior Ct. 513, at page 516.

This case is also authority for the proposition that the duty of the driver on the stop street is to stop at the intersection and not at the sign, and where his vision is obstructed, he must then ease his vehicle into the intersection slowly to a point where he can see before proceeding through the intersection.

Now, in this case, from defendant's own statement, he admits that he "shot out onto Orange Street and started to make a left turn".

It appears from this statement that at the time he shot out onto Orange Street he did not see and could not see the car traveling on the through highway and it is this rash conduct that in our opinion justifies us in concluding defendant violated the above quoted provisions of The Vehicle Code.

What was said in the case of Commonwealth v. Bonkoski, 81 D. & C. 191, on pages 194-195 of the opinion, we believe applies in the present case and we quote as follows:

"Defendant also argues that Miss Matonick was driving her car at an illegal rate of speed and therefore she forfeited her right of way. Although it was not specifically found by the hearing judge, his determination was that she was not going at an illegal speed; even if it were so found, defendant could not escape his criminal liability of not yielding the right of way. If it were otherwise, the driver coming through a stop sign would not be guilty of violating this section when there would be more danger by reason of the excessive speed of the car approaching the intersection on the other highway. Further, if there were a passenger in the Matonick car, the passenger would not have forfeited the right of way by reason of the excessive speed of the car in which he was riding. So that defendant's argument would lead to these anomalous conclusions: (1) That defendant would be guilty if the other car were not exceeding the speed limit, but if it were, he would not be guilty, and (2) that defendant would be guilty if there were a passenger in the other car and not guilty if there were no passenger. We do not believe that such absurd results were ever intended."

620

*Order*

And now, to wit, March 17, 1958, we adjudge defendant guilty and direct the district attorney to notify defendant to appear in open court on March 31, 1958, at 10 a.m., for sentence, unless in the meantime said defendant shall pay the costs of prosecution and a fine of $10 to the Commonwealth of Pennsylvania.