## Commonwealth, Appellant, *v.* Sills.

282

Submitted June 9, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*James Garrett* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellant.

No appearance entered nor brief submitted for appellee.

OPINION BY CERCONE, J., December 1, 1975:

The instant appeal by the Commonwealth arises from the order of the court below quashing the indictment of John R. Sills, appellee, because of the Commonwealth's non-compliance with the provisions of Pa. R. Crim. P.

203. The indictment charged appellee with having committed various crimes including obstruction of public justice and conspiracy; aiding and abetting the misfeasance, malfeasance and nonfeasance of a cigarette agent; and perjury, arising from appellee's testimony before a Special Investigating Grand Jury. When the court quashed the indictment on December 5, 1974, the statute of limitations had run on all the offenses, except the perjury charge. Hence, the Commonwealth would not be able to re-indict appellee except for perjury should the order of the court below be affirmed.[1] However, we find that the court erred in quashing the indictment and will reverse.

Before explaining the basis for our decision, a description of the tortuous procedure which preceded this appeal may be helpful:

In June of 1972, a special investigating grand jury convened to investigate an alleged cigarette smuggling conspiracy in Philadelphia County. As part of the investigation the grand jury subpoenaed the appellee, John Sills, to testify. Mr. Sills contested the subpoena through a motion to quash, which was denied. After Mr. Sills unsuccessfully appealed the motion to quash the subpoena, he appeared before the investigating grand jury in September of 1973, some fourteen months after being subpoenaed.

Under questioning that day Mr. Sills repeatedly refused to answer on the basis of his Fifth Amendment right against self-incrimination. When a citation for contempt was refused by Judge TAKIFF, the Commonwealth

---

1. Although the indictment was handed down by the grand jury January 3, 1974, the motion to quash was not filed until September, 1974, months after the statute had run on all the charges other than perjury. However, the Commonwealth has not argued that the motion to quash should have been denied because it was not timely filed. See *Commonwealth v. Rosenfield*, 220 Pa. Superior Ct. 105 (1971). Therefore, we may not rest our decision herein on that ground. *Wiegand v. Wiegand*, 461 Pa. 482 (1975).

decided to seek immunity for Mr. Sills. A petition therefor was filed and endorsed by the Attorney General for the Commonwealth and the District Attorney for Philadelphia County. This time Mr. Sills sought to prevent his testifying by filing a petition for a preliminary injunction with the Commonwealth Court and a petition for a writ of prohibition with the Supreme Court. Those efforts also proved unavailing as the immunity order was granted on November 21, 1973, and Mr. Sills was again ordered to appear before the grand jury. However, Sills promptly appealed that order to this court which, after temporarily staying the order to appear before the grand jury, certified the appeal to our Supreme Court. The Supreme Court quashed the appeal on December 14, 1973, thus affirming the lower court's ordering Sills to testify. By then it had been eighteen months since the investigating grand jury had subpoenaed Sills, and its proceedings were drawing to a close, so that no further opportunity to hear Sills' testimony existed. Accordingly, in its Eleventh Presentment, adopted on December 19-20, 1973, it recommended that Sills be indicted on the charges related to the investigation. On December 20, 1973, in an event widely publicized by the Philadelphia news media, Judge TAKIFF directed the Commonwealth to submit the presentment to the indicting grand jury. On December 21, 1973, the Commonwealth sent notice to Mr. Sills' suburban residence and the office of Mr. Sills' attorney, Richard G. Phillips, advising them that bills of indictment naming Mr. Sills as a defendant "will be presented to the December 1973 grand jury no sooner than ten (10) days from tomorrow." The notices were appropriately sent by certified mail, return receipt requested. On January 3, 1974, thirteen days after notice of the presentment had been mailed, the presentment was submitted to the grand jury which returned the indictment against Mr. Sills.

The basis for Mr. Sills' motion to quash the indictment was that the notice was inadequate under Pa. R. Crim. P. 203 (c) which, he claimed, required that he be given at least ten days' notice prior to submitting the bill of indictment to the grand jury. It seems that on January 8, 1974, the certified-mail notice to Mr. Sills was returned to the Commonwealth unclaimed. Furthermore, his attorney stated that because of the ordinary course of the mails, and the fact that December 24th-25th are office holidays, he did not receive notice of the presentment before December 26th or 27th, seven or eight days before the presentment was submitted to the grand jury. The lower court applied what it considered to be the ten day notice provision of Rule 203 (c), found it to have been offended, and quashed the indictment.

In support of its request that we reverse the order of the court below and reinstate the indictment, the Commonwealth argues: (1) That Pa. R. Crim. P. 203 does not apply to indictments initiated by special investigating grand juries, so that only reasonable notice was required, and that at least seven or eight days' notice to Mr. Sills' counsel was reasonable; and, (2) That, even if Rule 203 does apply to such proceedings, under Pa. R. Crim. P. 302 actual receipt of notice by the person to whom it is directed is not required, notice being adequate whether or not actually received so long as notification is attempted in compliance with Rule 302. Since we agree with the Commonwealth's first contention we shall not reach their second.

Pa. R. Crim. P. 203 provides as follows:

"Objections to Grand Jury and Grand Jurors

(a) A defendant who has been held for court or the attorney for the Commonwealth may challenge the array of the grand jury or an individual grand juror. A challenge to the array may be made only on the ground that the grand jury was not selected, drawn or summoned substantially in accordance with law.

An individual grand juror may be challenged for cause. All challenges must be made before the grand jurors are sworn, unless reasonable opportunity did not exist prior thereto; in any event a challenge must be made before the bill of indictment is submitted to the grand jury as provided in subdivision (c) hereof.
(b) All challenges shall be in writing and shall specify the grounds therefor. The parties shall not have a right to examine grand jurors on voir dire. If a challenge to the array is sustained, the grand jury shall be discharged; if a challenge to an individual grand juror is sustained, the court shall make an appropriate order which may include standing the challenged juror aside for a particular case or discharging him from further service. Where necessary, the court may replace a juror who has been stood aside or discharged.
(c) *A bill of indictment shall not be submitted to a grand jury for action until 10 days after a defendant is held for court unless he consents to an earlier submission and the Commonwealth agrees thereto, or the court, for cause, permits an earlier submission.*

At the outset it should be noted that nowhere does Rule 203 mention "notice" to the accused. After setting forth in subparts (a) and (b) the nature of the challenges to the grand jury and the procedure for their employment, subpart (c) states that a bill of indictment shall not be submitted to the grand jury "until ten days after a defendant is held for court." Ordinarily, "held for court" refers to the outcome of the preliminary hearing; *i.e.,* a defendant is held for court when a magistrate, or issuing authority, determines that a prima facie case exists, sufficiently proved by the Commonwealth to warrant its submission to a grand jury; so that, in the context of the rule, the manifest purpose of 203 (c) is to assure that a defendant has ten days from the time of his preliminary hearing to prepare his challenges to

the array or individual grand jurors. Of course, by its very nature, the preliminary hearing provides notice to a defendant that a bill of indictment will be submitted to the grand jury. Thus, under Rule 203 (c), notice to a defendant ten days prior to submission of the bill of indictment to the grand jury is only implicit, albeit a natural occurrence in a prosecution which proceeds from preliminary hearing to indictment. The question herein is whether "held for court" is a term which applies to cases which proceed by a presentment from a special investigating grand jury to indictment by an indicting grand jury and, if not, the extent of the notice required in this situation.

In *Commonwealth v. McCloskey*, 443 Pa. 117 (1971), our Supreme Court specifically confronted the argument that the Rules of Criminal Procedure abrogated the historical function of investigating grand juries by requiring, in all cases, that there be preliminary arraignments and preliminary hearings. In concluding that investigating grand juries survived the adoption of various of these rules, the Court stated at page 129:

"The Rules of Criminal Procedure at present simply do not concern themselves with this long established practice, nor do they foreclose any of the other traditional exceptions to proceedings by a preliminary hearing."

In light of this conclusion by the Court, it is unlikely that the draftees of the rules intended that Rule 203 (c) would apply to the unusual investigating grand juries situation, when the rules generally did not contemplate the procedure of investigating grand juries.

Furthermore, the rules of criminal procedure which establish the mechanics of preliminary hearings and arraignments (*viz.* Pa. R. Crim. P. 140-48) use the term "held for court" to describe the determination made by the "issuing authority" when the Commonwealth has presented a prima facie case against the accused. See,

e.g., Pa. R. Crim. P. 143, 146 and 26 (b) (8). In all these provisions the term "held for court" is used only in the context of preliminary hearings. It seems reasonable to conclude, therefore, that when that phrase is used in Rule 203 (c) it refers specifically, and only, to the action taken by the issuing authority after a preliminary hearing. And, since the exceptions to the "preliminary hearing to indictment" procedure are rare, the rules will be applicable in the vast majority of cases.[2]

Finally, in no practical sense of the term was Mr. Sills "held for court" in the instant case. As the district attorney points out, no complaint was filed against Sills, he had not been arrested or detained, he had not been required to post bail and, aside from his subpoena to testify as a witness before the investigating grand jury, he was under no court order limiting his freedom of action.

Thus, we are persuaded that Mr. Sills' situation was not one to which the Rules of Criminal Procedure are literally applicable, and that the indictment should not have been quashed simply because the Commonwealth failed to supply ten days' "actual" notice to appellee or his counsel prior to submitting the bill of indictment to the indicting grand jury.

That determination does not end our inquiry, however, for we must also decide whether the notice supplied by the Commonwealth was sufficient to allow appellee the opportunity to challenge the array of the grand jury, or challenge individual grand jurors for cause.

---

2. In *Commonwealth v. McCloskey*, supra, the Court listed three exceptions. First, where the district attorney or attorney general submits a bill to the grand jury without a prior binding over or commitment of the accused, as where there is a reasonable basis for concluding that the accused may be preparing to flee. Second, where an indicting grand jury makes a presentment based upon the personal knowledge of the jurors. And, lastly, the situation before us, where an investigating grand jury makes a presentment to an indicting grand jury. 443 Pa. at 130-131.

In *Commonwealth v. Dessus*, 423 Pa. 177 (1966), the accused was indicted for murder on the same day as his preliminary hearing. The court found that this procedure did not afford the accused an adequate opportunity to prepare challenges to the array or individual grand jurors. Noting specifically that its decision did not prejudice the Commonwealth's right to re-indict the accused, the Court ruled that his motion to quash the indictment was properly granted, stating:

> "While the law must not only permit but also encourage the speedy indictment and trial of all persons accused of crime, . . . it must not deprive an accused of any of his legal or Constitutional rights—in this case the right to promptly (a) challenge the array of the grand jury and (b) prove by legally competent evidence that one or more of the grand jurors should be disqualified for cause. While these rights may be waived by a defendant, we should not permit them to be circumvented." 423 Pa. at 188.

Also, in *Commonwealth v. Collemacine*, 429 Pa. 24 (1968), the Supreme Court quashed an indictment returned by a grand jury other than the one to which the bill of indictment ordinarily would have been submitted. Resting its decision on the rationale of *Dessus,* the court again concluded that the accused was not afforded an adequate opportunity to challenge the grand jury which indicted him, since he had no reason to know that the bill would be submitted to that particular grand jury.

*Dessus* and *Collemacine,* however, are the paradigm examples of denials of the right to challenge the grand jury. In the instant case, we have a seven or eight day period from the time appellee's attorney was notified and the day when the bill of indictment was submitted to the grand jury. We find this length of time sufficient to afford appellee a reasonable opportunity to challenge the array and individual grand jurors. This conclusion is supported by our decision in *Commonwealth v. Marmon,*

210 Pa. Superior Ct. 202 (1967), which pre-dated the adoption of Rule 203(c), so that the question of reasonable notice in the usual, preliminary hearing, situation was still determinable on a case by case basis. Therein we held that the submission of the bill of indictment to the grand jury only three days after the accused's waiver of his preliminary hearing afforded him a reasonable opportunity to lodge his challenges. In a situation similar to the instant case, especially in that the statute of limitations was also about to run on the offenses charged when the bill of indictment was submitted to the grand jury, this court concluded: "[A]ppellant was represented by counsel at every stage of the proceedings and under these circumstances . . . had sufficient reasonable opportunity, if promptly exercised, to challenge the array, etc." 210 Pa. Superior Ct. at 210.

Grand jury challenges to the array or for cause are not difficult nor time consuming to prepare since the bases for successful challenges are very limited. See Pa. R. Crim. P. 203(a). Indeed, no questioning on voir dire need be prepared since an accused is not permitted to subject a grand jury or grand jurors to a voir dire. See Pa. R. Crim. P. 203(b). While the accused must have an opportunity to challenge within a reasonable time the grand jury array or prove by legally competent evidence that one or more of the grand jurors should be disqualified for cause, Rule 203(a) specifically provides, "in any event, a challenge must be made *before* the bill of indictment is submitted to the grand jury." See *Commonwealth v. Dessus,* supra; *Brown v. Commonwealth,* 76 Pa. 319 (1874). In the instant case, counsel took no steps to postpone the presentment of the bill of indictment, nor did he inform the district attorney's office of an intention to post challenges. Instead, counsel waited nine months after the indictment, comfortably long after the statute of limitations had run on most of the offenses, to raise the question of reasonable notice.

We find the lower court's order quashing the indictment to be error.[3]

For the foregoing reasons, the lower court's order quashing the indictment is reversed, and the case is remanded *a procedendo*.

HOFFMAN, J., dissents.

---

3. We in no way intend for our rationale herein to imply that, had we found this situation to be governed by Rule 203(c), we would have affirmed the order quashing the indictment. See Pa. R. Crim. P. 306(a)(3)&(4). See also *Commonwealth v. Jones*, 456 Pa. 270, 272-73 (1974).