386 A.2d 581

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Andrew MILLHOUSE.**

Superior Court of Pennsylvania.

Submitted June 13, 1977.

Decided April 28, 1978.

208

Michael R. Stiles, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellant.

Gerald A. Stein and Abraham T. Needleman, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Andrew Millhouse, the appellee, was indicted on January 3, 1974, on charges concerning alleged official misconduct in his duties as a cigarette tax agent for the Commonwealth of Pennsylvania. In the ensuing four years this case has had a slow and torturous history both in the court below and on appeal: *Commonwealth v. Millhouse,* 239 Pa.Super. 445, 362 A.2d 398 (1976); *Commonwealth v. Millhouse,* 470 Pa. 512, 368 A.2d 1273 (1977). It has not yet been reached for trial. The issue now before us arises on appeal from an order of the court below quashing the indictments of the appellee for lack of adequate notice.

The underlying factual history is undisputed. The presentment of an investigating grand jury recommending prosecution of the appellee was returned on December 20, 1973, to presiding Judge Takiff of the court below who then directed the Commonwealth to seek the appropriate indictments. On the following day, December 21, the District Attorney sent a letter by certified mail, return receipt requested, to the appellee, addressed to 8616 Bayard Street, notifying him "that bills of indictment in which you are named as a defendant will be presented to the December, 1973, grand jury no sooner then ten (10) days from tomorrow" [December 22, 1973]. The appellee had moved from the above address since it had been given to the Investigating Grand Jury and the letter was forwarded and delivered to appellee's new address, 3121 North Carlisle Street, on December 28, 1973, where a receipt for the letter was signed "Andrew Millhouse" by appellee's brother. Appellee did not read this letter from the District Attorney until December 30. On December 31 he telephoned Abraham T. Needleman, a Philadelphia attorney who had represented him previously. Mr. Needleman was away from his office and unavailable to the appellee for approximately a week. The appellee did not attempt to contact anyone else in Mr. Needleman's office prior to the indictment nor did he attempt to notify the District Attorney that he was without a lawyer or that he wanted more time before the indictment was presented.

A copy of the District Attorney's letter to the appellee was also mailed to Mr. Needleman on December 21 on the assumption that he was appellee's attorney. However, he did not represent appellee at that time and did not enter an appearance for him in this case until May 28, 1974, after satisfactory financial arrangements had been made concerning past and future services.

The indictments were submitted to the December grand jury on January 3, 1974, and approved that day. On February 6, 1974, the appellee, unrepresented by counsel, was arraigned. The court concluded that the appellee did not meet the financial stringency test that would allow repre-

sentation by the public defender's office. Preliminary hearings were scheduled on March 12, 20, April 15, 18, 25 and May 1, 1974, but postponed on each occasion because the appellee was unrepresented by counsel. On May 3, 1974, Judge Blake, the calendar judge of the court below, admonished the appellee for his failure to obtain counsel and postponed further proceedings until May 13 in order to permit appellee to find counsel. Appellee assured the court at that time that while he was having difficulty reaching an agreement on a fee, he was sure that counsel could be obtained by May 13. On that date the appellee failed to appear before the court and a bench warrant was issued for his arrest.

On May 28, 1974, Abraham T. Needleman entered his appearance as attorney for the appellee and the bench warrant was withdrawn. This was 145 days after indictment, 111 days after arraignment and 77 days after the initial listing of the case for a preliminary hearing.

Appellee's attorney immediately initiated a request for discovery of certain records of the investigating grand jury which motion was disposed of on July 3, 1974. The case was then assigned to Judge Cain for trial, but on October 1, 1974, he excused himself, apparently because of his acquaintance with a co-defendant. Thereafter the case was assigned to Judge Porter for trial. A pre-trial conference was held on October 15, 1974, and a trial date of December 2, 1974, was set with the agreement of all concerned.

On November 1, 1974, the appellee's attorney filed motions seeking dismissal of the indictments on the basis of (a) an alleged violation of Rule 203 of the Pennsylvania Rules of Criminal Procedure because of inadequate notice of the indictment, and (b) the requirement of Rule 1100 of the Pennsylvania Rules of Criminal Procedure that the appellee be tried within 270 days.

Relief on the first ground was denied on November 29, 1974, by Judge Porter and on the second ground on December 2, 1974, by Judge Greenberg of the court below to whom all motions under Rule 1100 were referred for decision. The

appellee was allowed to take an interlocutory appeal from Judge Greenberg's order. He was also successful in petitioning the court below for a reconsideration of Judge Porter's order. On February 24, 1975, Judge Porter entered an order quashing the indictments on the ground that the appellee had not been given a reasonable notice of his impending indictments.

The Commonwealth appealed this ruling and the cross appeals of the opposing parties were consolidated for argument in this Court. We sustained the appellee's contention that he had not had a trial within the time limits of Rule 1100, but made no ruling on the merits of the Commonwealth's appeal from the order quashing the indictments for lack of reasonable notice inasmuch as we were discharging the appellee under Rule 1100: *Commonwealth v. Millhouse,* 239 Pa.Super. 445, 362 A.2d 398 (1976). The Commonwealth appealed our ruling and the Supreme Court determined that Rule 1100 had not been violated. The case was remanded to this Court for consideration of the Commonwealth's appeal addressed to the dismissal of the indictments for lack of reasonable notice: *Commonwealth v. Millhouse,* 470 Pa. 512, 368 A.2d 1273 (1977). We now address ourselves to that question.

A defendant has the right under the common law of Pennsylvania, independently of either statute or rule, to challenge the array of an indicting grand jury on the ground that it was not selected in accordance with law or to challenge an individual grand juror for cause: 17 P.L.E. Grand Jury § 4. This does not include the right to subject a grand jury or grand jurors to a voir dire: *Commonwealth v. Dessus,* 423 Pa. 177, 185–186, 224 A.2d 188 (1966); *Brown v. Commonwealth,* 76 Pa. 319 (1874).

At common law a challenge to a grand jury could be made either before or after an indictment was returned. The only time limitation was that it be entered before the plea in court: *Commonwealth v. Lopinson,* 427 Pa. 284, 292–293, 234 A.2d 552 (1967); *Commonwealth v. Weiner,* 101 Pa.Super. 295, 298 (1930). This time period eliminated the necessity of

notice before indictment because the challenge could be made after the event. We said in *Commonwealth v. Bruno,* 203 Pa.Super. 541, 547, 201 A.2d 434, 436 (1964):

"In some of those cases the fact of notice to the defendants of when their cases were to be considered by the grand jury was disputed. However, lack of notice has been held not to be prejudicial in itself because the defendant is privileged to challenge the array and formation of the grand jury at any time until a plea is entered or a jury sworn."

However, more recent decisions have held that the challenge to the array of a grand jury or to an individual juror must be made before indictment, this by extension of Rule 203 of the *Pennsylvania Rules of Criminal Procedure: Commonwealth v. Wasserman,* 466 Pa. 430, 437–438, 353 A.2d 430 (1976); *Commonwealth v. Polaf,* 248 Pa.Super. 26, 374 A.2d 1299, 1301 (1977); *Commonwealth v. Sills,* 237 Pa.Super. 280, 289–290, 352 A.2d 539.

There is merit in the requirement that a challenge to the validity of an indictment be made the first order of business. Otherwise the Commonwealth may lose the right to re-indict within the applicable statute of limitations or witnesses may become unavailable. The courts have an equal interest in having the legality of an indictment determined as soon as possible lest it go through the time consuming proceedings preliminary to a trial only to have the indictment thrown out at a later stage of the proceeding.

These considerations explain our holding in *Commonwealth v. Magid & Dickstein,* 91 Pa.Super. 513, 516–517 (1927), that a challenge to the grand jury ". . . would have been considered on motion to quash if made at the first opportunity after indictment." It has been repeatedly held that the challenge "must be promptly exercised": *Commonwealth v. Dessus, supra,* 423 Pa. 177, 188–189, 224 A.2d 188; *Commonwealth v. Sills,* 237 Pa.Super. 280, 290, 352 A.2d 539 (1975); *Commonwealth v. Marmon,* 210 Pa.Super. 202, 210, 232 A.2d 236 (1967). The same necessity for prompt action exists if a claim of lack of adequate notice of an indictment

is to be made the basis of a challenge to the validity of an indictment. Otherwise, the time of the trial court may be wasted.

In a recent decision, *Commonwealth v. Lee and Lewis,* 246 Pa.Super. 294, 369 A.2d 1329, 1331 (1977), we reconciled the right of a defendant to a reasonable time within which to challenge the array of a grand jury and the needs of the Commonwealth and the courts to have such a motion disposed of as promptly as possible by holding that the objection must be made within a reasonable time, tested on a case-by-case basis. We said:

> "*Levinson* [*Commonwealth v. Levinson,* 239 Pa.Super. 387, 362 A.2d 1080] did not hold, and we do not now hold, that a defendant's right to challenge the composition of an investigating grand jury disappears upon submission of a presentment to an indicting grand jury. Where no statute, procedural rule or decision establishes a time limit for raising a particular objection, the rule is simply that the objection must be made within a reasonable time. Cf. *Commonwealth v. Sills,* 237 Pa.Super. 280, 352 A.2d 539 (1975). The reasonableness of a delay in objecting must be determined on a case-by-case basis."

The common law right to challenge a grand jury was modified in Rule 203 of the *Pennsylvania Rules of Criminal Procedure* with respect to "a defendant who has been held for court" on the basis of a preliminary hearing. With respect to such a defendant, subdivision (a) of the Rule provides that—

> ". . . in any event, a challenge must be made before the bill of indictment is submitted to the grand jury as provided in subdivision (c) hereof."

Subdivision (c) provides that a bill of indictment shall not be submitted to a grand jury until ten days after a defendant has been held for court. There is no explicit requirement that a defendant be notified because, by the very nature of a preliminary hearing, the act of holding him for court was notice without more.

■ However, Rule 203 does not apply to a defendant who has not had a preliminary hearing but is indicted on the recommendation of an investigating grand jury. Such a defendant is not one "who has been held for court" as provided by the Rule: *Commonwealth v. McCloskey,* 443 Pa. 117, 129, 277 A.2d 764 (1971); *Commonwealth v. Sills, supra,* 237 Pa.Super. 280, 286–288, 352 A.2d 539. Our Supreme Court, speaking in the context of an investigating grand jury, held in *McCloskey* (443 Pa. at p. 129, 277 A.2d at p. 770)—

"The Rules of Criminal Procedure at present simply do not concern themselves with this long established practice, nor do they foreclose any of the other traditional exceptions to proceedings by a preliminary hearing."

We quoted this holding with approval in *Sills* (237 Pa.Super. at p. 287, 352 A.2d 539) and it was repeated by the Supreme Court in *Commonwealth v. Mayberry,* 459 Pa. 91, 104–105, 327 A.2d 86 (1974).

■ At common law, a defendant is entitled to a reasonable time to challenge the array of a grand jury. Since our recent rulings that this challenge must be made before indictment, it follows that a defendant must have reasonable notice prior to the presentation of an indictment.

We considered the adequacy of such a notice in *Commonwealth v. Sills, supra,* 237 Pa.Super. 280, 352 A.2d 539. That decision would be decisive of the case now before us except for the fact that Sills was represented by counsel before his indictment while the appellee was not. Both situations deal with recommendations by the same investigating grand jury and indictments by the same grand jury on the same day, January 3, 1974. In both cases, the written notice of the intention to present an indictment was mailed from the district attorney's office on December 21, 1973, received in *Sills* on December 27 or 28 and by the appellee in this case on December 28. In *Sills* the motion to quash was delayed for nine months after notice; here the delay was ten months. The periods of notice being substantially identical, the ruling in *Sills* is most significant. We held 237 Pa.Super. at pages 289–291, 352 A.2d at pages 543–544:

"In the instant case, we have a seven or eight day period from the time appellee's attorney was notified and the day when the bill of indictment was submitted to the grand jury. We find this length of time sufficient to afford appellee a reasonable opportunity to challenge the array and individual grand jurors. This conclusion is supported by our decision in *Commonwealth v. Marmon,* 210 Pa.Super. 202 (1967), which pre-dated the adoption of Rule 203(c), so that the question of reasonable notice in the usual, preliminary hearing, situation was still determinable on a case by case basis. Therein we held that the submission of the bill of indictment to the grand jury only three days after the accused's waiver of his preliminary hearing afforded him a reasonable opportunity to lodge his challenges . . .

"Grand jury challenges to the array or for cause are not difficult nor time consuming to prepare since the bases for successful challenges are very limited. See Pa.R.Crim.P. 203(a). Indeed, no questioning on voir dire need be prepared since an accused is not permitted to subject a grand jury or grand jurors to a voir dire . . . In the instant case, counsel took no steps to postpone the presentment of the bill of indictment, nor did he inform the district attorney's office of an intention to post challenges. Instead, counsel waited nine months after the indictment, comfortably long after the statute of limitations had run on most of the offenses, to raise the question of reasonable notice. We find the lower court's order quashing the indictment to be error."

■ If this were a case governed by Rule 203(c) the notice given to appellant would clearly have been adequate for there was a thirteen-day interval between the mailing of the notice on December 21 and the presentation of the indictment on January 3. The notice was mailed in strict accordance with Rule 306(a)(3–4), certified mail being the legal equivalent of registered mail, 45 P.S. § 101. The fact of mailing on December 21st is undisputed and establishes, prima facie, a thirteen-day notice: *Commonwealth v. Jones,*

216

456 Pa. 270, 272–273, 318 A.2d 711 (1974). In *Commonwealth v. Sills, supra,* 237 Pa.Super. 280, 291, 352 A.2d 539, 544 (footnote), we said:

"We in no way intend for our rationale herein to imply that, had we found this situation to be governed by Rule 203(c), we would have affirmed the order quashing the indictment. See Pa.R.Crim.P. 306(a)(3) & (4). See also *Commonwealth v. Jones,* 456 Pa. 270, 272–273, 318 A.2d 711 (1974)."

If circumstances subjective to the appellee made the notice inadequate, the burden was on him to bring the matter to the immediate attention of the district attorney's office.

██ Was the appellee entitled to additional time because he elected to be unrepresented by counsel? He was as capable as counsel would have been to telephone the district attorney's office and request a postponement of the present-ment of the indictment for a few days in order to enable him to obtain counsel. This is all that he needed to have done to have preserved his rights and he had ample time in which to do it. The name and address of both the district attorney and the assistant handling the case were prominently displayed on the notice which the appellee received.

In point of fact, it would have made no difference whether appellee received his notice on December 22 or December 28 because it was to take him five months to come to terms with the attorney of his choice. He was required by our common law decisions to proceed "promptly," at the "earliest possible moment" to challenge the array of the grand jury, if he had a challenge. He elected to do nothing.

His attorney added another five months to the delay by going into discovery proceedings and a pre-trial conference at which a trial date was set, before filing his motion to quash the indictment on the claim that the appellee had not had reasonable notice of his indictment. This was ten months after indictment and nine months after arraignment.

We have no difficulty in concluding that the appellee, by his inaction and delay both before and after obtaining counsel, has waived his right to question the adequacy of his notice of the indictment or to challenge the array of the grand jury. Were it otherwise, our pre-trial procedures would be in shambles.

The order of the lower court quashing the indictments of the appellee is reversed and indictments reinstated.

SPAETH, J., concurs in the result of this opinion.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.